ORIGINAL

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP 1 4 2004

DAVID ... LAND, CLERK
BY
DEPUTY _____

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | **COMPLAINT** |
| Plaintiff, | : | |
| | : | |
| v. | : | 4:04cv 321 |
| | : | |
| 1) DEAN FOODS COMPANY, and | : | |
| 2) JOHN D. ROBINSON, | : | |
| | : | |
| Defendants. | : | |

Plaintiff, United States Securities and Exchange Commission, files this Complaint against Defendants Dean Foods Company ("Dean") and John D. Robinson ("Robinson")(collectively, "Defendants"), and would respectfully show the Court as follows:

**SUMMARY**

1.     This case concerns Defendants' involvement in an illicit income recognition scheme perpetrated by Fleming Companies, Inc. ("Fleming").

2.     Starting in late 2001, Fleming implemented a plan to improperly recognize material amounts of income to compensate for forecasted earnings shortfalls.  Dean, a Fleming vendor, aided Fleming's scheme by providing a side letter that falsely described a $2.5 million payment to Fleming.  Robinson, who during the relevant time was the Senior Vice President of Sales and Marketing for the Dean Dairy Group, a business unit of Dean, was responsible for dealing with Fleming and signed the false letter.

3.     Based on the conduct alleged herein, Dean and Robinson aided and abetted Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933

("Securities Act") [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)] and Sections 13(a) and 13(b)(2)(A) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)], and Rules 12b-20, 13a-13 and 13b2-1, thereunder, [17 C.F.R. §§ 240.12b-20, 240.13a-13 and 240.13b2-1].

## JURISDICTION AND VENUE

4.     The Commission brings this action pursuant to the authority conferred upon it by Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Sections 21(d)(3) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78aa].

5.     This Court has jurisdiction over this action, and venue is proper, pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)], and Sections 21(d)(3) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78aa].

6.     Defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national exchange in connection with the acts, practices, and courses of action alleged herein.

7.     Venue is proper because Fleming is headquartered in Lewisville, Texas, and certain of the acts and transactions described herein took place in the Eastern District of Texas.

## DEFENDANTS

8.     **Dean**, a Delaware corporation headquartered in Dallas, Texas, is a processor and distributor of milk and other dairy products.

9.     **Robinson**, of Dallas, Texas, was Senior Vice President of Sales and Marketing for the Dean Dairy Group, a business unit of Dean.

## OTHER RELEVANT ENTITY

10.    **Fleming** is an Oklahoma corporation headquartered in Lewisville, Texas. Fleming's stock is registered pursuant to Section 12 of the Exchange Act and, prior to filing for Chapter 11 bankruptcy protection in April 2003, its stock traded on the New York Stock Exchange.  Before bankruptcy, Fleming was the nation's largest grocery wholesaler and a retail grocery operator with approximately 50 distribution centers nationwide and more than 100 retail stores throughout the Midwestern and Western United States.  In 2001, Fleming reported approximately $15.6 billion in revenues and $23.3 million in profits.  In 2002, the company reported $15.5 billion in revenues and a net loss of $84 million.

## FACTS

### Fleming's improper initiatives to meet earnings expectations

11.    During 2001 and the first half of 2002, and following a period of poor financial performance, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings and "bridge the gap" between actual operating results and Wall Street expectations.  In these initiatives, Fleming improperly structured otherwise ordinary transactions in forms that, on paper, would justify and maximize an immediate increase in earnings.

12.    One of Fleming's frequently used initiatives was accelerating recognition of up-front payments received under forward-looking vendor agreements.   Specifically, Fleming persuaded vendors to provide side letters that described up-front payments—that Fleming and the vendors plainly intended to secure future rights and services—as compensating some form of past performance, such as rebates or expenses.  Fleming then used these letters to immediately book the entire up-front payment as an offset to

expenses, rather than over time as generally accepted accounting principles ("GAAP") required.

13.     As designed, the illicit reduction in expenses by Fleming significantly inflated the company's earnings in the fourth quarter of 2001 and the first two quarters of 2002 and allowed Fleming to meet securities analysts' earnings expectations.

### Dean's participation in Fleming's inflated earnings

14.     In early 2002, Fleming and Dean began negotiating a supply agreement under which Dean would provide Fleming's retail stores with milk for three years. Robinson was principally responsible for negotiating the supply agreement on Dean's behalf.  Throughout the negotiations, Fleming made it clear that, to receive the supply agreement, Dean needed to make an "up-front" payment of approximately $2 million. Ultimately, the parties agreed on an up-front payment of $2.5 million.

15.     As the negotiations were concluding, Fleming demanded that the payment provision be removed from the supply agreement and supplied Dean with a letter describing the payment as a "rebate" for "past performance."  Fleming knew it had not earned any such rebate in this instance and, up to that point in the negotiations, the up-front payment was understood to be consideration for the future business being negotiated.

16.     At the time of negotiations, Fleming was a sizable customer of Dean's dairy operations.  Throughout negotiations, Dean knew it had no existing obligation to pay Fleming any rebate and that the $2.5 million payment was to secure the supply agreement.

17.     Fearing that Fleming would choose a different supplier, Dean acquiesced to Fleming's demand and Robinson signed the letter.   To protect its interests, Dean demanded a penalty provision in the supply agreement that obligated Fleming to repay a prorated portion of the $2.5 million if Fleming breached its contractual obligations.

18.     In March 2002, Dean provided Fleming the requested side letter and up-front payment, but only after Fleming signed the supply agreement.   Fleming used the side letter to justify recognizing the entire $2.5 million as an offset to expenses in the first quarter of 2002, which accounted for approximately $.03 per share of the $.52 per share Fleming reported as earnings for the quarter.

19.     Contrary to GAAP, Fleming relied on Dean's letter to justify recording the $2.5 million as an offset to expenses, which equaled approximately 6% of the earnings Fleming reported for the first quarter.   Fleming included these misleading figures in its Form 10-Q for the first quarter ended April 20, 2002, and in publicly disseminated press releases.   Fleming incorporated the first quarter Form 10-Q into registration statements on Forms S-3, S-8, and S-4 filed with the Commission during the summer of 2002.

## FIRST CLAIM

### Aiding and Abetting Fleming's Violations
### of Sections 17(a)(2) and 17(a)(3) of the Securities Act

(Against Dean and Robinson)

20.     Paragraphs 1 through 19 are realleged and incorporated by reference.

21.     Based on the conduct alleged herein, Fleming violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

22.     Defendants Dean and Robinson, acting alone or in concert with others, in the manner set forth above, knowingly provided substantial assistance to Fleming in connection with its violations of Sections 17(a)(2) and 17(a)(3) as alleged herein.

23.     By reason of the foregoing, Dean and Robinson aided and abetted Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### SECOND CLAIM

**Aiding and Abetting Fleming's Violations
of Sections 13(a) and 13(b)(2)(A)of the Exchange Act and Rules
12b-20, 13a-13 and 13b2-1 Thereunder**

(Against Dean and Robinson)

24.     Paragraphs 1 through 19 are realleged and incorporated by reference.

25.     Based on the conduct alleged herein, Fleming violated Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Rules 12b-20, 13a-13 and 13b2-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-13 and 240.13b2-1].

26.     Defendants Dean and Robinson, acting alone or in concert with others, in the manner set forth above, aided and abetted Fleming, as an issuer of a security registered pursuant to Section 12 of the Exchange Act, in its failing to file with the Commission, in accordance with rules and regulations the Commission has prescribed, information and documents required by the Commission to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act and annual reports and quarterly reports as the Commission has prescribed.

27.    Defendants Dean and Robinson, acting alone or in concert with others, in the manner set forth above, provided substantial assistance to Fleming, who, directly or indirectly, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected Fleming's transactions and dispositions of its assets.

28.    By reason of the foregoing, Dean and Robinson aided and abetted Fleming's violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Rules 12b-20, 13a-13 and 13b2-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-13 and 240.13b2-1].

## PRAYER FOR RELIEF

The Commission respectfully requests that the Court:

### I.

Enter an order directing Dean to pay a $400,000 civil money penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### II.

Enter an order directing Robinson to pay a $50,000 civil money penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### III.

Grant such further relief as the Court deems just and proper.

Respectfully submitted,

TIMOTHY P. DAVIS
(Attorney in charge)
Texas Bar No.  00798134

Attorney for Plaintiff
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-6438
(817) 978-4927 (fax)
E-Mail:  davistp@sec.gov

Of Counsel:

SPENCER C. BARASCH
D.C. Bar No. 388886
DAVID L. PEAVLER
Texas Bar No. 00784738
JAMES E. ETRI
Texas Bar No. 24002061



JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFF

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

DEAN FOODS COMPANY and JOHN D. ROBINSON

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **DALLAS, TX**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Timothy P. Davis, Esq.
SECURITIES & EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
817/978-6438

ATTORNEYS (IF KNOWN)
**See attached listing**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | PTF |  | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copy rights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities |
| ☐ 153 Recovery OF Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Sections 17(a)(2) & (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(2) & (3)]; Sections 13(a) & 13(b)(2)(A) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78jm(a) & (b)(2)(A)]; and Rules 12b-20, 13a-13 and 13b2-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-13 & 240.13b2-1].

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND** ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):

4 other related cases simultaneously filed: see attached listing

| JUDGE | DOCKET NUMBER |
|---|---|
| | |

DATE
09/14/2004

SIGNATURE OF ATTORNEY OF RECORD
_Timothy P. Davis_

**FOR OFFICE USE ONLY**
Receipt # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**I.(c) - COUNSEL FOR DEFENDANTS**

Harry J. Weiss, Esq.
WILMER, CUTLER & PICKERING
2445 M. St., N.W.
Washington, DC 20037
202/663-6993
Counsel for Defendant Dean Foods Co.

David R. McAtee, Esq.
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
1700 Pacific Avenue
Ste. 4100
Dallas, TX
214/969-2736
Counsel for Defendant John D. Robinson

**VIII. – RELATED CASES**

SEC v. John K. Adams
SEC v. Bruce Keith Jensen
SEC v. Kemps LLC, f/k/a Marigold Foods LLC, James Green and Christopher Thorpe
SEC v. Digital Exchange Systems, Inc., Rosario Coniglio & Steven Schmidt